## DAVIS, Pros. Attorney, *v.* BEST.

Where in a proceeding by *quo warranto*, the information* commenced as follows: "Your informant, Wm. P. Davis, Prosecuting Attorney of the county of Lucas;" *Held*, That the information was properly styled, under section 2152 of the Code, which provides that such information may be filed by the *district* attorney of the proper county.

An information filed by the proper prosecuting attorney, in his official character, requires no other verification than his official signature.

The August election is established by law, and the time it is held, should be judicially taken notice of.

A county judge, elected at an April election, to fill a vacancy, occasioned by the removal of his predecessor before the expiration of his term of office, does not acquire the right to hold the office for the term of two years.

The words "two years" in section three of the act entitled "An act to require county judges to give bond," approved January 29, 1853, are to be taken in contradistinction to the words "four years" in section 103 of the

Davis v. Best.

Code, creating the office of county judge, and are not intended to apply to the filling of vacancies in that office, or to alter the law on that subject.

A county judge elected to fill a vacancy, is only entitled to serve out the unexpired term of his predecessor.

*Appeal from the Lucas District Court.*

THIS was an information in the nature of a *quo warranto*, filed by the prosecuting attorney of Lucas county, to oust William C. Best from the office of county judge, who was elected at the April election, 1855.

The plaintiff claims that said Best, was elected to fill a vacancy occasioned by the removal of one Wescoat, who had formerly held that office, and that the term of office expired on the election and qualification of one Francis Savacool, who was elected to that office at the August election, 1855. The information alleges, that the defendant is "unlawfully holding and exercising the office of county judge for the county of Lucas," and sets up that Savacool, who claims the office, received a majority of all the votes of the electors of said county, cast at said August election for the office, and that the canvassers for said county declared him elected; that he gave bond, and received a certificate of election, and was qualified, all in pursuance to law in such cases provided; and afterwards demanded the books and papers of the office; and that defendant refused to deliver them, &c. To this information, there was a demurrer filed and sustained by the court, for the following causes:

1. That the information does not state that Wm. P. Davis is the district attorney of the proper county, or that Jacob C. Best is holding any office in the state of Iowa, and is not subscribed and sworn to.

2. Said information does not state on what day the election was held, at which Savacool was elected county judge; or that said election was held pursuant to law; or that he received a majority of all the legal votes cast; or when the canvassers declared said Savacool elected; or for what term, or how long.

3. Said information does not state the time when, or the

manner in which, said Savacool executed his bond, or received his certificate of election, and was qualified or demanded the books, papers, &c.

4. Said information is not accompanied with an abstract of the election therein referred to, or other exhibit.

5. Said information shows that Best was elected at the April election, 1855, and he thereby acquired a right to hold the office two years.

Judgment having been rendered for the defendant on the demurrer, the plaintiff appealed, and assigns for error, the decision of the court below.

*W. Penn. Clarke*, for the appellant.

*J. E. Neal*, for the appellee.

IsBELL, J.—With regard to the points made under the first division of the demurrer, we think that the demurrant has misapprehended the record, except as to the last specification in this division. The style of the information is: "Your informant, Wm. P. Davis, *prosecuting* attorney of the county of Lucas." It is true, that the Code, § 2152, uses the term "district" attorney, but there can be no doubt that *prosecuting* attorney was intended, as there was not at the time of its adoption, nor has there since been, *technically,* any "*district*" attorney of the proper county. The information does clearly state, that Best is unlawfully holding and exercising the office of county judge for the county of Lucas. And so far as it is objected, that the information is not sworn to, we hold that an information filed by the proper prosecuting attorney, in his official character, requires no other verification than his official signature.

Under the second division of the demurrer, it is objected that the information does not state, on what day the election was held. It is stated that Savacool was elected at the August election, A. D. 1855. The August election is established by law, and the time it is held should be judicially taken notice of. We think there is nothing in this objection.

As to the other objections urged in the second and third divisions of the demurrer, we regard them as either frivolous, or not sustained by the record. The fourth division is based upon the idea, that an abstract of the returns of the election should accompany the information. We know of no provision of the law requiring this.

This brings us to the last specification in the demurrer, which raises the substantial question in the case, namely, does a county judge, elected at an April election, to fill a vacancy, occasioned by the removal of his predecessor before the expiration of his term of office, acquire the right to hold the office for the term of two years? The determination of this question, involves a construction of the law creating that officer, as modified by a subsequent statute. The provisions of the statute which are deemed material in the determination of this question, are the following: By the Code, § 103, it is provided: "The county judge shall be elected at the first election holden in August, after this statute has been in force thirty days, and if such election does not take place in the year 1851, the county judges elected in 1852, shall hold for the term of three years, and a new election shall take place at the August election, in the year 1855, and every four years thereafter." By section 240, it is provided that "the following shall be the years of the election, and the terms of service of the respective officers. In the year 1851, at the August election, in each county, a county judge for the term of four years," &c. "But if this statute be not in force on the day of the above election, then an election shall take place for a county judge, and a supervisor of roads, in each county, at the general election in the year 1852, the county judge to hold for three years, and the supervisor for one year, and until their respective successors are elected and qualified; and a supervisor shall be again elected in the year 1853, and each two years thereafter, and a county judge in the year 1855, and each four years thereafter," &c. By section 434, it is provided, that "vacancies occurring in county or township officers, shall be filled at the first election which takes place in April or August, after

the expiration of fifteen days from the occurrence; and when a justice of the peace is elected to fill a vacancy, he is entitled to hold for the term of two years from the time of his election," &c. By the act approved January 29, 1853, after providing that county judges then in office, should within sixty days after the taking effect of the act, give a bond, or forfeit their offices, it is provided by section 3, that "county judges hereafter elected, shall hold their offices for the term of two years, and until their successors are elected and qualified." It is contended by defendant, that this act is intended to apply to all county judges elected after the taking effect of. this act, whether to fill a vacancy on account of an unexpired term, or otherwise.

On the part of relator, it is contended, that the words two years, in the act of 1853, are only to be taken in contra-distinction to the words *four years* in the provision of the Code creating the office; and are not intended to apply to the filling of vacancies, or to alter the law on that subject. The construction contended for by the defendant, has the *letter* of the act to favor it; and also derives some additional strength from the fact, that the legislature had, in the same act, provided a contingency, whereby all the offices of county judge in the state, might by possibility become vacant, without specifying the length of time those elected to fill such vacancies should hold, unless they were to hold for two years; yet, in view of all the legislation upon the subject, and the duties devolving upon the county judge, we are constrained to hold the construction contended for by the relator, the true one. From the provisions of the *Code*, above quoted, it is apparent that it was the intention of the legislature, in adopting them, that the office of the county judge should be *regularly* filled at the August election. There is a peculiar propriety in this provision, arising out of the duties devolving upon that officer. He is the accounting officer of the county. He audits and settles the accounts of the treasurer, and those of any other collector of county revenue, taxes, or incomes. He is the superintendent of the fiscal concerns of the county. It is his duty, on the first Monday of *July,*

annually, to cause to be made a minute statement of them for the preceding year. By the various provisions of the law regulating the collection of revenue, at that time, the accounts with the treasurer of the county, and other fiscal officers, are as nearly wound up, and the business of the office as little complicated, as may be. Again, by the provisions of the law, in the ordinary course of the business of the office, little occurs to render the accounts of the office complicated, between the first Monday in July and the time a successor, elected in August, must qualify. The whole system of county finance appears to have been framed, with an eye to the termination of the duties of that officer. And from hence, we discover the reason why the legislature, in adopting the Code, was so particular in providing that, in case the election of county judge should not take place in the year 1851, the county judges elected in the year 1852 should hold for three years, and that a county judge should be elected at the *August* election in 1855, and every four years thereafter. By construing the words *two years*, in the act of 1853, to apply to the regular term of the office, and not applying to vacancies, the harmony of the system is preserved. We think the legislature did not intend to provide for vacancies by the act of 1853, but only to shorten the regular term of office from four to two years. We hold, therefore, that a county judge, elected to fill a vacancy, is entitled to serve out the unexpired term of his predecessor only, and hence the demurrer was improperly sustained.

Judgment reversed and cause remanded.